944 P.2d 858 (1997)
Thomas NEVIUS, Petitioner,
v.
WARDEN, NEVADA STATE PRISON, E.K. McDaniel; and Attorney General of Nevada, Frankie Sue Del Papa, Respondents.
Thomas NEVIUS, Appellant,
v.
WARDEN, NEVADA STATE PRISON, Respondent.
Nos. 29027, 29028.
Supreme Court of Nevada.
August 28, 1997.
*859 Terri Steik Roeser, Zephyr Cove; Michael Pescetta, Assistant Federal Public Defender, Las Vegas, for Petitioner and Appellant.
Frankie Sue Del Papa, Attorney General, Carson City; Stewart L. Bell, District Attorney, Clark County, for Respondents.

OPINION
PER CURIAM:
Petitioner/appellant Thomas Nevius claims that Justice Cliff Young is disqualified in these cases because: (1) the Attorney General, whose office represents the State, endorsed and publicly supported Justice Young in his successful 1996 reelection campaign, and (2) Justice Young stated that he upheld the death penalty seventy-six times while on the Court. The first ground for disqualification was made and rejected in State ex rel. Dep't of Transp. v. Barsy, 113 Nev. ___, 941 P.2d 969 (1997), and that decision is dispositive of this ground for disqualification.
During the 1996 election, Justice Young's opponent attacked him for dissenting in a death penalty case. In response, Justice Young stated that he favored the death penalty in the appropriate case and pointed out that he had voted to uphold the death penalty seventy-six times. Nevius contends that Justice Young has an extra-judicial interest in keeping this tally as high as possible. We disagree.
Justice Young was simply responding to an assertion, based on one case, that he was soft on the death penalty and demonstrating to the electorate that the allegation against him was distorted. We have previously stated that reasonable latitude must be given a judge or justice to permit him or her to run an election campaign and respond to criticism. See Las Vegas Downtown Redev. Agency v. Hecht, 113 Nev. ___, 940 P.2d 127 (1997). Nevius concedes that a general philosophical orientation, or a belief in a particular controversial legal position, is not normally a ground for disqualification. See, e.g., Aetna Life Ins. Co. v. Lavoie, 475 U.S. 813, 820-21, 106 S.Ct. 1580, 1584-85, 89 L.Ed.2d 823 (1986); U.S. v. Cooley, 1 F.3d 985 (10th Cir.1993). Citing Justice Young's record in upholding the death penalty was nothing more than showing that he will enforce Nevada law in an area very important to Nevada voters, and this does not constitute a disqualifying bias or the appearance thereof.
Accordingly, the motion to disqualify Justice Young is denied.[1]
SPRINGER, J., dissented.
SPRINGER, Justice, dissenting:
Nevius seeks rehearing principally because of evidence that a prosecutor made the following out-of-court comment to one of Nevius' *860 attorneys: "You don't think I wanted all of those niggers on my jury do you?"
In my opinion rehearing should be granted. The judgment of conviction should be reversed, or, at the very least, the matter should be remanded so that the statement attributed to the prosecutor in this case can be carefully examined by the trial court.
Nevius contends that Justice Young cannot sit fairly in this matter because during the time that Nevius' death-sentence was under review by this court Justice Young formed a highly-visible political alliance with the State's attorney general, who in numerous campaign advertisements publicly "urged all Nevadans" to vote for Justice Young. Nevius claims that in addition to forming a close alliance with the State's chief prosecutor, Justice Young has publicly taken such a pro-prosecution, anti-accused stance as to make it impossible for Justice Young to sit in impartial judgment of his case. For example, not only did Justice Young describe himself in campaign advertisements as a judge who was "tough on crime"[1] he presented himself as being a judge who had a "record of fighting crime" and supported his judicial crime-fighting record by claiming that he had "[voted] to uphold [the death penalty] 76 times."
"Tough on crime" claims made by judges in election campaigns are so common in Nevada as to go almost unnoticed. Our judicial discipline authorities customarily ignore this kind of judicial misconduct once the judge becomes elected or reelected. It goes beyond "tough on crime" for a judge to claim that he is a "crime fighter," especially when, on top of this, the judge identifies his principal election supporter as being the State's attorney general. Judges are supposed to be judging crime not fighting it.
With regard to his alliance with the attorney general, Justice Young, during the pendency of this case, repeatedly published his appreciation for the attorney general's support and how much he "welcomed" her support in his election campaign because of the attorney general's "role as the State's top law enforcement officer." It is understandable that Nevius would feel aggrieved when he read that one of the judges who was going to decide if he were to live or die was being this strongly supported by the State's "top law enforcement officer." When a convict who is condemned to death sees that the State's chief law enforcement officer is publicly presented as the chief ally of one of the judges who is going to decide whether he will live or die, then, certainly the convict has a legitimate reason for seeking removal of such a judge from his case.
Candidates for judicial office are, of course, forbidden by Canon 7B to "make pledges or promises of conduct in office other than faithful and impartial performance of the duties of the office." Justice Young's saying that he has a judicial record of fighting crime and putting forth his 76-death-case record may not be the same as making a "pledge" that he well continue to fight crime on the bench or that he will "uphold" death penalty judgments in all future cases; nevertheless, if Justice Young enhances his crime-fighting record by raising his seventy-six death judgments to seventy-seven in this case, it seems to me that Nevius may have the right to complain that Justice Young should not have been sitting on his case.
If the public praise and endorsement of Justice Young by the attorney general were not enough in itself, Justice Young's putting forth his "record" of fighting crime rather *861 than judging crime adds up, in my opinion, to an unacceptable appearance of bias in this case. I do not here contend that Justice Young ought to be disqualified in every case in which his political ally in law enforcement is counsel of record; however, given the fact that the Young-Top Law Enforcement Officer alliance was a matter of such widespread public attention during the pendency of this case and, given Justice Young's public flaunting of his "record of fighting crime" during the time that Nevius was watching and waiting the outcome of his death sentence appeal, I think that Justice Young should be disqualified from making any further decisions in this death case.
NOTES
[1] The Honorable Miriam Shearing, Chief Justice, voluntarily recused herself from participation in the decision of this appeal.

The Honorable Cliff Young, Justice, did not participate in the decision of this matter.
[1] "Tough-on-crime" claims might be overlooked as being generalized statements; but claiming to be a judicial crime-fighter is, arguably, in a different category. The problem with "tough on crime" statements and boasting of a "record of fighting crime" is that such statements carry the implication that the judge would act in a biased manner (that is, in favor of the state) in criminal cases. In Washington, a judge was censured for campaign statements that he was "tough on drunk driving." In re Kaiser, 111 Wash.2d 275, 759 P.2d 392, 394-96 (1988).

For a general discussion of the failure of our judicial discipline machinery to deal with campaign misconduct and other serious judicial misconduct see Whitehead v. Comm'n on Jud. Discipline, Table of Disciplinary Oversights, Concurring Addendum to Order Granting Petition (No 24598, October 28, 1994). Getting elected to judicial office seems to create an immunity against discipline proceedings relating to a judge's unethical campaign practices; but this does not mean that convicts condemned to death cannot raise issues relating to a judge's pro-prosecution campaign boasts.