OPINION
By the Court,
Hardesty, J.:
In this case, we consider the propriety of using a recusal list when determining whether to assign cases to a district court judge. A judge’s recusal list is a registry of persons with respect to whom the judge has some disqualifying relationship that would warrant the judge’s disqualification from hearing the case. Recusal lists keep track of such disqualifications and automatically trigger a judge’s recusal when a case is filed. Judges use recusal lists to streamline the case assignment process, namely to avoid having cases assigned to them when they would be disqualified from presiding under the Nevada Code of Judicial Conduct (NCJC). While we conclude that judges may use recusal lists for case assignment purposes, we also conclude that such lists must be created and maintained in a manner consistent with the objective reasons specified in the NCJC.
We also consider whether a judge’s duty to sit and hear a case supersedes a client’s right to select an attorney of his or her choice when that attorney appears on the assigned judge’s recusal list. We conclude that, when a judge’s duty to sit conflicts with a client’s right to choose counsel, the client’s right generally prevails, except when the lawyer was retained for the purpose of disqualifying the judge and obstructing management of the court’s calendar.
Here, because petitioner’s attorney was improperly listed on the district judge’s recusal list and petitioner’s attorney was not chosen in order to disqualify the assigned judge and obstruct the management of the court’s calendar, the district court erred by disqualifying petitioner’s attorney. Therefore, we grant the petition for a writ of mandamus.

FACTS

In September 2002, real party in interest Richard Don Millen filed a complaint for divorce against petitioner Nan Bell Millen in the Eighth Judicial District Court. Over the course of the next few years, several trial continuances were granted, and during that time, the court clerk assigned the Millen case to a number of family division judges. The reassignments resulted from the parties’ filing peremptory challenges against two judges and a third *1249 judge’s reassignment to juvenile matters. The divorce case also remained dormant for a period of time because Nan was prosecuted for criminal solicitation of murder after she allegedly sought to hire someone to kill Don.
Eventually, the court clerk assigned the divorce case to respondent Judge N. Anthony Del Vecchio, who scheduled the matter for trial in September 2004. The parties stipulated to continue the trial to February 2005. In January 2005, Nan entered an Alford plea[2] in her criminal case and was sentenced to serve twelve months in the Clark County Detention Center. The parties again stipulated to continue the divorce trial, from February to June 2005.
During Nan’s incarceration, Judge Del Vecchio allowed Nan’s divorce attorney to withdraw and permitted Nan to hire a new attorney. Judge Del Vecchio then granted Nan’s new attorney a continuance in order to properly prepare for trial but explained to the parties that this continuance would be the last. Trial was scheduled for September 30, 2005.
Nan was released from custody in late August 2005. On September 1, 2005, at a mandatory settlement conference conducted by Judge Del Vecchio, Nan’s new divorce attorney orally moved to withdraw because he and Nan had disagreed on how to proceed with her case. Although Nan was not present, Judge Del Vecchio granted the motion.
Two weeks before trial was scheduled to commence, attorney Robert W. Lueck, a former Eighth Judicial District Court family division judge, filed a notice of appearance on Nan’s behalf. Lueck also filed a motion for another continuance because he had a conflicting trial scheduled on the September 30 trial date, and he needed time to prepare for Nan’s trial.
Lueck’s appearance presented a complication because Lueck was on Judge Del Vecchio’s recusal list.[3] Although the record indicates that Judge Del Vecchio had apparently attempted to place Lueck on his recusal list as of January 1, 2005, Lueck’s placement on the list was not formalized until April 2005.[4] Judge Del Vecchio explains that the basis for the recusal was that in April 2005, Lueck appeared in an unrelated case pending before Judge Del Vecchio and Lueck called the judge’s chambers, talked to the judge’s secretary, and inquired about rescheduling a hearing. Judge Del Vecchio perceived Lueck’s inquiry as a request for a favor premised on their status as former judicial colleagues on the family court bench. Because he felt compromised by Lueck’s request, *1250 Judge Del Vecchio formally recused himself from that case and caused the matter to be reassigned to another judge. Lueck denies knowing that this event resulted in his placement on Judge Del Vecchio’s recusal list.
After Lueck appeared in the Millen matter, Judge Del Vecchio disqualified Lueck from representing Nan and ordered the trial to proceed as scheduled. In an oral pronouncement reflected in the district court minutes, Judge Del Vecchio noted that this case had been in progress since May 2003, that there had been numerous court appearances in the matter, and that the file had grown to encompass five volumes. Judge Del Vecchio further noted that Lueck was Nan’s third attorney, as well as a “conflicted attorney,” who not only appeared on the judge’s recusal list, but was aware of his listing. Judge Del Vecchio also opined that Nan had retained Lueck for the purpose of either obtaining another continuance or forcing the Millen matter’s reassignment to another judge. Finally, Judge Del Vecchio noted that Lueck’s appearance violated the family court division’s “midstream recusal policy.”[5]
Nan now petitions this court for a writ of mandamus that would prevent Judge Del Vecchio from disqualifying Lueck to appear on her behalf. As directed, Judge Del Vecchio has filed an answer to the petition and seeks guidance concerning the propriety and use of recusal lists.

DISCUSSION

Standard for writ relief

A writ of mandamus is available to compel performance of an act that the law requires as a duty resulting from an office, trust, or station, or to control an arbitrary or capricious exercise of discretion.[6] Because mandamus is an extraordinary remedy, a writ *1251 will not issue if the petitioner has a plain, speedy and adequate remedy at law.[7] A mandamus petition is appropriately used to challenge district court orders that disqualify attorneys from representing parties.[8] The issuance of a writ of mandamus is purely within the discretion of this court.[9]

Validity of oral orders disqualifying counsel

Judge Del Vecchio disqualified Lueck from serving as Nan’s counsel by an oral pronouncement contained in the clerk’s minutes. Generally, a “court’s oral pronouncement from the bench, the clerk’s minute order, and even an unfiled written order are ineffective for any purpose.”[10] However, in State, Division of Child & Family Services v. District Court, we held that oral pronouncements concerning case management issues, scheduling, administrative matters, or emergencies that do not permit a party to gain an advantage are effective.[11] Judge Del Vecchio’s oral order to disqualify Lueck was a case management decision based upon Lueck’s inclusion on the Judge’s recusal list and the Judge’s conclusion that Lueck’s appearance was intended to secure a trial continuance. Accordingly, because Judge Del Vecchio’s decision involved scheduling and administrative matters that did not allow either party to gain an advantage in the case, Judge Del Vecchio’s oral pronouncement disqualifying Lueck is enforceable and subject to review.

Recusal lists

In her petition, Nan does not disagree with the use of recusal lists or the midstream recusal policy generally, but only with their application to her attorney in this specific case. Nan contends that Lueck was not formally notified of his placement on Judge Del Vecchio’s recusal list, she did not retain Lueck for the purpose of forcing Judge Del Vecchio’s recusal in favor of another judge — the practice targeted by the midstream recusal policy — and there is no valid reason why her attorney, Lueck, should be disqualified.
In his answer, Judge Del Vecchio expresses general support for the use of recusal lists, but he requests that we address two prob *1252 lems with recusal lists as currently used: (1) secrecy, and (2) lack of uniform standards concerning which attorneys are placed on a recusal list.
Judge Del Vecchio notes that a judge’s recusal list is generally kept secret from the judge’s colleagues, lawyers, and the public. He believes that this is problematic because judges should have to justify their choices, and secrecy leaves no way to verify whether a judge’s choices are supported by judicial canons, rules, or statutes. This lack of verification, in turn, could undermine public confidence in the judiciary, according to Judge Del Vecchio. Judge Del Vecchio also explains that the recusal list’s secrecy could lead to judicial abuses because, if the list is secret, a judge could maintain a long list of conflicted attorneys, which would yield a comparatively less demanding caseload for that judge.[12] In an attempt to curb such abuses, Judge Del Vecchio states that the Eighth Judicial District Court has informally implemented a policy requiring the chief judge to approve every attorney selected for placement on a recusal list, but the list, nevertheless, remains secret to the lawyers, litigants, other family division judges, and the public.
Judge Del Vecchio further contends that the recusal policy lacks objective criteria or procedures to guide the judges in deciding when an attorney should be added to his or her recusal lists. Accordingly, Judge Del Vecchio requests from this court (1) a rule requiring that recusal lists be made public, along with some explanation as to why an attorney is on the list, and (2) guidance on what conditions must exist for a judge to place an attorney on his or her recusal list. Judge Del Vecchio also requests that we validate the midstream recusal policy in accordance with NRS 2.120.[13]
We first address Judge Del Vecchio’s concerns regarding the propriety of using recusal lists in general. In deciding whether the use of recusal lists is appropriate, a judge’s duty to sit and preside over proceedings must be weighed against the case management efficiencies obtained by maintaining a registry of persons that will disqualify the judge from participating in a given case because of ethical or other compelling reasons.
*1253 We have previously stated that a trial judge has a duty to sit and “ ‘preside to the conclusion of all proceedings, in the absence of some statute, rule of court, ethical standard, or other compelling reason to the contrary.’ ”[14] The NCJC offers a similar admonition: “A judge shall hear and decide matters assigned to the judge except those in which disqualification is required.”[15] Thus, a judge has a general duty to sit, unless a judicial canon, statute, or rule requires the judge’s disqualification.
NCJC Canon 3E(1) explains when a judge should not sit on a case and provides, in pertinent part as follows:[16]
A judge shall disqualify himself or herself in a proceeding in which the judge’s impartiality might reasonably be questioned, including but not limited to instances where:
(a) the judge has a personal bias or prejudice concerning a party or a party’s lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding;
(b) the judge served as a lawyer in the matter in controversy, or a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter, or the judge has been a material witness concerning it;
(c) the judge knows that he or she, individually or as a fiduciary, or the judge’s spouse, parent or child wherever residing, or any other member of the judge’s family residing in the judge’s household, has an economic interest in the subject matter in controversy or in a party to the proceeding or has any other more than de minimis interest that could be substantially affected by the proceeding;
(d) the judge or judge’s spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:
(i) is a party to the proceeding, or an officer, director or trustee of a party;
(ii) is acting as a lawyer in the proceeding;
(iii) is known by the judge to have a more than de minimis interest that could be substantially affected by the proceeding;
*1254 (iv) is to the judge’s knowledge likely to be a material witness in the proceeding.
NCJC Canon 3E(l)(a) provides a subjective basis for disqualification in that only the judge can determine whether he or she has a personal bias or prejudice toward litigants or their counsel or possesses personal knowledge about the case. NCJC Canon 3E(l)(b)-(d), on the other hand, list a number of disqualifying relationships or factors that are primarily objective in nature and would, unless waived by the parties after consideration outside of the judge’s presence, compel the judge to disqualify himself or herself from sitting on a case.[17]
These objective relationships and factors are generally known to a judge before any case is filed. Those persons listed in NCJC Canon 3E(l)(b)-(d) are easily identifiable and would create an immediate reason for recusal by the judge in the absence of a waiver. Because recusal lists are maintained to identify the names of persons with whom the judge has a disqualifying relationship, a registry of such persons improves case management by avoiding case assignment delays. In other words, recusal lists inform the clerk’s office about disqualifying relationships so that the clerk can avoid filing cases in the judge’s department. Because subsections 3E(l)(b)-(d) provide objective bases for disqualification, maintaining a recusal list based on any of the grounds set forth in these subsections would not present a conflict between a judge’s duty to sit and a litigant’s right to choose counsel. Accordingly, we approve of recusal lists that base disqualification on the reasons set forth under NCJC 3E(l)(b)-(d).
Subjective reasons for disqualification based on a judge’s personal bias or prejudice or knowledge of disputed facts presents another dimension to our consideration of recusal lists’ propriety. A judge is presumed to be unbiased,[18] and generally, “the attitude of a judge toward the attorney for a party is largely irrelevant.”[19] We have concluded that disqualification for personal bias requires “an extreme showing of bias [that] would permit manipulation of *1255 the court and significantly impede the judicial process and the administration of justice.’ ’[20] Generally, disqualification for personal bias or prejudice or knowledge of disputed facts will depend on the circumstances of each case. Recusal on those grounds, therefore, does not meet the case management objectives for recusal lists. Going further, generally a judge does not know whether he or she possesses knowledge of disputed facts in a case until long after the case has been filed. We therefore disapprove of recusal lists for which the basis for disqualification rests on NCJC Canon 3E(l)(a). Recusal by a judge in such cases is best resolved on a case-by-case basis.
Based upon the issues Judge Del Vecchio raises, we are concerned about how recusal lists are prepared and approved in the family division of the Eighth Judicial District Court. We observe at the outset that the district court apparently persists in its use of the midstream recusal policy notwithstanding this court’s prior rejection of that policy.[21] Continued use of a disapproved policy is inappropriate, and disqualification of counsel in reliance on this policy must therefore be rejected. Streamlining case management is a commendable goal, and recusal lists are an appropriate tool aimed at preventing delay in initial case assignments. However, the placement of an attorney on a judge’s recusal list must be rooted in one of the objective reasons for disqualification enumerated in the NCJC Canon 3E(l)(b)-(d). Case assignment recusal lists must contain not only the registry of names, but also note the NCJC Canon 3E(l)(b)-(d) basis for the disqualifying relationship between the judge and a litigant or an attorney.
Further, such recusal lists must be reviewed by the judge periodically and disclosed and subjected to public inspection. The NCJC’s primary policy is “to promote public confidence in the judiciary.”[22] Keeping recusal lists secret does not enhance, and instead impedes, this important objective. Therefore, recusal lists must be public and based upon one of the reasons listed in NCJC Canon 3E(l)(b)-(d).
*1256 In this case, Judge Del Vecchio offers two reasons for placing Lueck on his recusal list. First, Judge Del Vecchio points out that he and Lueck were former colleagues on the bench. But he fails to elaborate further. Second, Judge Del Vecchio alleges that Lueck contacted his chambers in a prior, unrelated case and requested that the case be rescheduled. Neither explanation provides a basis for the Judge’s recusal under NCJC Canon 3E. Therefore, Lueck was improperly listed by Judge Del Vecchio on his recusal list.

Disqualification of counsel

If judicial disqualification is warranted based on an attorney’s representation, we must consider whether a judge’s duty to sit and hear a case supersedes a client’s right to select the attorney of his or her choice. Attorney “[disqualification is an extreme remedy that will not be imposed lightly.”[23] Invariably, disqualifying an attorney causes delay, increases costs, and deprives parties of the counsel of their choice. “‘Courts should, therefore, disqualify counsel with considerable reluctance and only when no other practical alternative exists.’ ”[24]
On the other hand, attorney disqualification may be an appropriate remedy when a lawyer is retained for the purpose of forcing a judge’s disqualification, thus obstructing the management of the court’s calendar. “[A] party or his attorney should not be permitted to cause the disqualification of a judge by virtue of his or her own intentional actions.”[25] “[Cjounsel may not be chosen solely or primarily for the purpose of disqualifying the judge.’ ’[26] As recognized by the Fifth Circuit Court of Appeals, one of the rationales for this principle is maintaining public confidence in the judicial system:
*1257 A lawyer’s acceptance of employment solely or primarily for the purpose of disqualifying a judge creates the impression that, for a fee, the lawyer is available for sheer manipulation of the judicial system. It thus creates the appearance of professional impropriety. Moreover, sanctioning such conduct brings the judicial system itself into disrepute. To tolerate such gamesmanship would tarnish the concept of impartial justice. To permit a litigant to blackball a judge merely by invoking a talismanic “right to counsel of my choice” would contribute to skepticism about and mistrust of our judicial system.[27]
The record does not reflect that Nan retained Lueck for the purpose of disqualifying Judge Del Vecchio and forcing reassignment. Instead, the documents submitted to this court in support of the petition demonstrate that Nan retained Lueck only after she was left unrepresented less than two weeks before trial. Accordingly, we conclude that, even if Lueck was properly on Judge Del Vecchio’s recusal list, Judge Del Vecchio abused his discretion in disqualifying Lueck from representing Nan at trial.

CONCLUSION

A court’s oral pronouncement, reflected in the clerk’s minutes, disqualifying counsel is administrative in nature and thus subject to review. We conclude that judges may use recusal lists for case assignment purposes, but such lists must be public and identify the applicable NCJC Canon 3E(l)(b)-(d) disqualifying relationship that excuses the judge’s duty to sit. Additionally, when a judge’s duty to sit conflicts with a client’s right to counsel, the client’s right generally prevails, except where the lawyer was retained to obstruct the management of the court’s calendar.
The record fails to disclose a sufficient basis for Judge Del Vecchio to disqualify Lueck from representing Nan.
Accordingly, we grant the petition, and we direct the clerk of this court to issue a writ of mandamus, instructing the district court to vacate its oral order disqualifying petitioner’s counsel.
Rose, C. J., Maupin, Gibbons, Douglas and Parraguirre, JJ., concur.

 North Carolina v. Alford, 400 U.S. 25 (1970).

 Lueck was the only attorney on Judge Del Vecchio’s recusal list.

 Judge Del Vecchio fails to explain why he initially attempted to place Lueck on his recusal list in January 2005.

 The midstream recusal policy bars an attorney from representing a client whose case is already assigned to a judge on whose recusal list the attorney appears unless a judicial peremptory challenge is available and timely exercised. If an attorney represents a client before a case is filed or assigned to a judge on whose list the attorney appears, then the attorney will be allowed to represent the client and the case will be reassigned to another judge by the court clerk.
The midstream recusal policy was informally implemented by the Eighth Judicial District Court’s Family Court Division in an attempt to prevent parties’ tactical attempts to intentionally force certain judges’ recusals “midstream” or midway through a case in order to secure the assignment of another judge who may be more amenable to the parties’ position. The policy is also aimed at combating parties’ attempts to delay the proceedings.

 See NRS 34.160; Smith v. District Court, 107 Nev. 674, 677, 818 P.2d 849, 851 (1991); Round Hill Gen. Imp. Dist. v. Newman, 97 Nev. 601, 637 P.2d 534 (1981).

 NRS 34.170; Harvey L. Lerer, Inc. v. District Court, 111 Nev. 1165, 1168, 901 P.2d 643, 645 (1995).

 Cronin v. District Court, 105 Nev. 635, 639 n.4, 781 P.2d 1150, 1152 n.4 (1989).

 Smith, 107 Nev. at 677, 818 P.2d at 851.

 Rust v. Clark Cty. School District, 103 Nev. 686, 689, 747 P.2d 1380, 1382 (1987) (emphasis added).

 120 Nev. 445, 454, 92 P.3d 1239, 1245 (2004).

 WhiIe many cases filed in the family court division are seriously contested, many other assigned cases are resolved through a joint petition in which the parties consent to the relief requested. Because judges with longer recusal lists are more likely to be disqualified from any filed case, these cases must be reassigned to their colleagues with shorter recusal lists. The recused judges are then assigned new cases from the general pool, which have a greater likelihood of being uncontested and, therefore, less demanding. The purported result is that judges with longer recusal lists have less taxing caseloads.

 NRS 2.120 states that this court shall regulate original civil practice and procedure and may make rules for the governance of the district court as long as they are not inconsistent with state law or the Nevada Constitution.

 See Las Vegas Downtown Redev. v. Dist. Ct., 116 Nev. 640, 643, 5 P.3d 1059, 1061 (2000) (quoting Ham v. District Court, 93 Nev. 409, 415, 566 P.2d 420, 424 (1977)); see also In re Lemoine, 686 So. 2d 837, 840 (La. 1997) (“[T]he judge has an obligation, part of his sworn duty as a judge, to hear and decide cases properly brought before him. He is not at liberty, nor does he have the right, to take himself out of a case and burden another judge with his responsibility without good and legal cause.”).

 NCJC Canon 3B(1).

 See also NRS 1.230 (listing grounds for disqualifying judges other than supreme court justices).

 NCJC Canon 3F grants a judge, except in instances of personal bias or prejudice, the discretion to disclose the basis for disqualification and to propose that the parties waive the disqualifying factor after the parties consider the proposal outside of the judge’s presence.

 Hogan v. Warden, 112 Nev. 553, 559-60, 916 P.2d 805, 809 (1996).

 Las Vegas Downtown Redev. Agency v. Hecht, 113 Nev. 632, 635, 940 P.2d 127, 128 (1997).

 Id. at 636, 940 P.2d at 129.

 Judge Del Vecchio has articulated policy reasons to justify the midstream recusal policy. Any reconsideration of the policy should be initiated through an administrative docket petition. The administrative docket petition procedure permits greater input by affected parties, attorneys, and judges than this writ petition permits or contemplates.

 Hogan, 112 Nev. at 558, 916 P.2d at 808.

 Duncan v. Merrill Lynch, Pierce, Fenner & Smith, 646 F.2d 1020, 1025 n.6 (5th Cir. 1981), overruled on other grounds by Gibbs v. Paluk, 742 F.2d 181 (5th Cir. 1984).

 Lemm v. Adams, 955 S.W.2d 70, 74 (Tenn. Ct. App. 1997) (quoting In re Ellis, 822 S.W.2d 602, 605 (Tenn. Ct. App. 1991)); accord Whalley Dev. v. First Citizens Bancshares, 834 S.W.2d 328, 331-32 (Tenn. Ct. App. 1992) (noting that trial courts “should be reluctant to disqualify a litigant’s counsel of choice and should grant disqualification motions sparingly”); Bd. of Ed. of N. Y. City v. Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979).

 Hecht, 113 Nev. at 649-50, 940 P.2d at 138 (citing Richard E. Flamm, Judicial Disqualification § 21.4 (1996); U.S. v. Helmsley, 760 F. Supp. 338, 342 (S.D.N.Y. 1991); State v. Jeffers, 661 P.2d 1105, 1128-29 (Ariz. 1983)).

 McCuin v. Texas Power & Light Co., 714 F.2d 1255, 1264 (5th Cir. 1983).

 Id. at 1265.