OPINION
 

 Per Curiam:
 

 SUMMARY
 

 The case underlying this original petition involves Harry, John, and Carol Pappas’s successful request to have Judge Mark R. Denton recuse himself from an eminent domain case involving the Pappases and the City of Las Vegas Downtown Redevelopment Agency (the “Agency”), which condemned the Pappases’ property in order to develop the Fremont Street Experience project in downtown Las Vegas. The Pappases’ request was based on their conclusion that Judge Denton’s “impartiality might reasonably be questioned” under Nevada’s Code of Judicial Conduct (“NCJC”) because Judge Denton had received campaign contributions from Fremont Street casinos standing to benefit from the outcome of the case. Despite stating that there existed no actual or implied
 
 *642
 
 prejudice, Judge Denton recused himself because of the contributions and in order to avoid the appearance of impropriety. Judge Denton’s decision triggered a chain reaction of subsequent recusals, prompting the Agency to petition this court for a writ of mandamus or prohibition reinstating Judge Denton.
 
 [1]
 
 Because we conclude that the campaign contributions did not constitute proper grounds for disqualification, we grant the Agency’s petition.
 

 STATEMENT OF FACTS
 

 On November 19, 1993, the Agency filed a complaint in eminent domain against the Pappases in the Eighth Judicial District. In this action, the Agency sought to obtain right, title, and interest to certain property in downtown Las Vegas for its Fremont Street Experience redevelopment project. As part of the project, the Agency planned to obtain the subject property and give it to the Fremont Street Experience Limited Liability Company (the “LLC”) and the Fremont Street Experience Parking Corporation (the “Parking Corp.”). Importantly, the LLC, and possibly the Parking Corp., is collectively owned by eight casinos on Fremont Street that stand to benefit from the redevelopment project.
 

 In August 1998, the underlying action was assigned to Judge Denton.
 
 [2]
 
 Later that same year, Judge Denton conducted a successful campaign to retain his seat, during which time he received contributions ranging from $150.00 to $2,000.00 from four casinos involved in or affiliated with the redevelopment project.
 

 At a preliminary hearing on January 25, 1999, Judge Denton informed the parties of the contributions. Judge Denton also stated that he did not think “that the making of any of those contributions would influence me one way or the other” and that he did not feel “any bias or prejudice whatsoever one way or another.” At the end of the hearing, Judge Denton and the parties agreed to reconvene on February 1, 1999, to resolve the situation.
 

 Immediately prior to the scheduled hearing on February 1, 1999, the Pappases filed an affidavit seeking to disqualify Judge Denton. The affidavit cited NCJC Canon 3E(1)
 
 [3]
 
 to support the
 
 *643
 
 Pappases’ claim that Judge Denton’s impartiality can reasonably be questioned because of the campaign contributions and because two of the proposed witnesses were casino owners who had donated to Judge Denton’s campaign.
 

 In order to allow the Agency to prepare a response, the court adjourned the matter. Two days later, however, Judge Denton recused himself from the case and issued a minute order concluding that the decision to recuse was “in consonance with the spirit and substance” of the commentary to NCJC 3E(1). Moreover, Judge Denton cited NCJC Canon 2
 
 [4]
 
 and concluded: “Given the proffered ‘appearance of impropriety,’ and the need to avoid the actual appearance of impropriety, this Court enters its RECUSAL, notwithstanding the lack of actual or implied bias, prejudice, partiality, or impropriety.”
 

 Thereafter, three district court judges assigned to the case recused themselves, resulting in what the Agency appropriately terms “judicial pinball.” The case has since been stayed pending the outcome of this writ petition filed by the Agency on February 22, 1999, asking this court to issue a writ of mandamus compelling Judge Denton to return to the case.
 

 DISCUSSION
 

 As a general rule, a judge has a duty to “preside to the conclusion of all proceedings, in the absence of some statute, rule of court, ethical standard, or other compelling reason to the contrary.” Ham v. District Court, 93 Nev. 409, 415, 566 P.2d 420, 424 (1977);
 
 see also
 
 NCJC Canon 3B(1) (“A judge shall hear and decide matters assigned to the judge except those in which disqualification is required.”). Further, a judge is presumed to be impartial, and the party asserting a challenge carries the burden of establishing sufficient factual and legal grounds warranting disqualification.
 
 See
 
 Hogan v. Warden, 112 Nev. 553, 559-60, 916 P.2d 805, 809 (1996).
 

 In the present case, Judge Denton asserted two grounds for recusal: (1) the proceeding was one in which the judge’s impartiality might reasonably be questioned under NCJC Canon 3E(1); and (2) his participation might create an appearance of impropriety under NCJC Canon 2.
 

 
 *644
 
 In PETA v. Bobby Berosini, Ltd., 111 Nev. 431, 436, 894 P.2d 337, 340 (1995), we held that the NCJC, including Canon 2, was not just a guide for the conduct of judges, but also provided substantive grounds for judicial disqualification. In City of Las Vegas Downtown Redevelopment Agency v. Hecht, 113 Nev. 632, 940 P.2d 127 (1997) (“Hecht I”), however, we clarified that NCJC Canon 2 in and of itself does not serve as grounds for disqualification. In particular, we held that “the specific disqualification provisions of Canon 3(E), and subsequent case law applying these provisions, should control over the broader statement of Canon 2.”
 
 Hecht I,
 
 113 Nev. at 636 n.2, 940 P.2d at 129 n.2;
 
 see also
 
 Las Vegas Downtown Redevelopment Agency v. Hecht, 113 Nev. 644, 650, 940 P.2d 134, 138 (1997) (Hecht II). Therefore, our analysis here is concerned with whether the Pappases have shown sufficient factual and legal grounds under NCJC Canon 3E requiring Judge Denton’s disqualification.
 

 NCJC Canon 3E(1) provides, in pertinent part:
 

 A judge shall disqualify himself or herself in a proceeding in which the judge’s impartiality might reasonably be questioned, including but not limited to instances where:
 

 (a) the judge has a personal bias or prejudice concerning a party or a party’s lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding;
 

 (c) the judge knows that he or she . . . has an economic interest in the subject matter in controversy or in a party to the proceeding or has any other more than de minimis interest that could be substantially affected by the proceeding;
 

 “De minimis” is then defined as: “an insignificant interest that could not raise reasonable question as to a judge’s impartiality.” NCJC Terminology (1998).
 

 Further, we have held that whether a judge’s impartiality can reasonably be questioned is an objective question that this court reviews as a question of law using its independent judgment of the undisputed facts.
 
 See
 
 In re Varain, 114 Nev. 1271, 1278, 969 P.2d 305, 310 (1998).
 

 In the context of campaign contributions, we have recognized that a contribution to a presiding judge by a party or an attorney does not ordinarily constitute grounds for disqualification.
 
 See
 
 In re Petition to Recall Dunleavy, 104 Nev. 784, 769 P.2d 1271 (1988). Indeed, we commented that such a rule would “severely and intolerably” obstruct the conduct of judicial business in a state like Nevada where judicial officers must run for election and consequently seek campaign contributions.
 
 Id.,
 
 104 Nev. at 790,
 
 *645
 
 769 P.2d at 1275;
 
 see also
 
 O’Brien v. State Bar of Nevada, 114 Nev. 71, 76 n.4, 952 P.2d 952, 955 n.4 (1998) (judge serving on state bar board of governors was not disqualified from voting on appointment to commission on judicial selection despite having received over $100,000.00 in campaign contributions from prospective appointee and her partner).
 

 In recognition of this recurring problem of campaign contributions, this court recently amended the commentary to NCJC 3E(1) to include the following guidance: “The mere receipt of a campaign contribution from a witness, litigant or lawyer involved with a proceeding is not grounds for disqualification.” NCJC Canon 3E(1) Commentary (2000).
 

 In the present matter, the campaign contributions to Judge Denton, which ranged from $150.00 to $2,000.00, are not extraordinary in amount and, without more, constitute only an “insignificant interest” that does not raise a “reasonable question as to a judge’s impartiality.” While we commend Judge Denton’s efforts to carefully balance his duty to preside with his duty to uphold the integrity of the judiciary, we conclude that the campaign contributions to Judge Denton do not serve as grounds for disqualification under Canon 3E.
 

 We note that Judge Denton’s minute order indicated that his recusal was made “notwithstanding the lack of actual or implied bias, prejudice, partiality, or impropriety.” Therefore, we see no reason why Judge Denton cannot preside over the matter, and accordingly we grant the Agency’s petition for a writ of mandamus.
 
 [5]
 

 CONCLUSION
 

 We conclude that the contributions made to Judge Denton’s campaign do not constitute grounds for disqualification under NCJC Canon 3E. Accordingly, we grant the Agency’s petition. The clerk of the court shall issue a writ of mandamus compelling Judge Denton to preside over the district court proceedings.
 
 [6]
 

 [1]
 

 While the Agency’s petition alternatively requests a writ of prohibition, we conclude that a writ of mandamus is more appropriate because the petitioner seeks to control a district court’s actions after an alleged manifest abuse of discretion.
 
 See
 
 Round Hill Gen. Imp. Dist. v. Newman, 97 Nev. 601, 637 P.2d 534 (1981) (writ of mandamus is proper where district judge manifestly abuses discretion).
 

 [2]
 

 The Pappases’ land was obtained for redevelopment purposes in 1994. Therefore, at this point in time, the Pappases were disputing the amount they received in compensation, the lost rent and legal fees, and possible punitive damages based on their alleged constitutional violation.
 

 [3]
 

 Canon 3E(1) provides, in relevant part, that a judge “shall disqualify himself or herself in a proceeding in which the judge’s impartiality might reasonably be questioned,” including instances where the judge has a personal
 
 *643
 
 bias or prejudice concerning a party, or where the judge has an economic or any other more than de minimis interest that could be substantially affected by the proceeding.
 

 [4]
 

 Canon 2 provides that “a judge shall avoid impropriety and the appearance of impropriety in all of the judge’s activities.”
 

 [5]
 

 The Agency also contends that the Pappases’ affidavit failed to meet the procedural requirements of NRS 1.235(1). Because we choose to resolve the matter on other grounds, we need not address this issue.
 

 [6]
 

 Lamentably, we recognize that the Pappases have in the past made certain public remarks concerning the impartiality of the judiciary and may continue to do so as this matter proceeds. Although operating under such circumstances may be difficult or disheartening, “the judicial duties of a judge take precedence over all the judge’s other activities,” and “a judge shall hear and decide matters assigned to the judge except those in which disqualification is required.” NCJC Canon 3A and 3B(1). indeed, if a party were allowed to selectively disqualify a judge through what amounts to media-bullying, the very integrity and independence upon which the judiciary depends would be undermined.