TO BE PUBLISHED

# Supreme Court of Kentucky

## 2005-SC-000872-D



CAMILLE E. DEAN, CO-PERSONAL
REPRESENTATIVE OF THE ESTATE OF DAVID
H. DEAN, SR.; DAVID H. DEAN, JR., CO-
PERSONAL REPRESENTATIVE OF THE ESTATE
OF DAVID H. DEAN, SR.; ROBERT J. BURNS, SR.,
CO-PERSONAL REPRESENTATIVE OF THE
ESTATE OF DAVID H. DEAN, SR.; CAMILLE E.
DEAN, INDIVIDUALLY; CAMILLE E. DEAN,
BENEFICIARY OF THE ESTATE OF DAVID H.
DEAN, SR.; DAVID H. DEAN, JR., INDIVIDUALLY;
DAVID H. DEAN, JR., BENEFICIARY OF THE
ESTATE OF DAVID H. DEAN, SR.                                              MOVANTS

ON APPEAL FROM COURT OF APPEALS
V.                          NO. 2004-CA-001345
JEFFERSON CIRCUIT COURT NO. 2000-CI-5764 AND 2000-CI-
7505

JOHN T. BONDURANT; WINSTON E. MILLER;
FROST, BROWN & TODD, LLC; FROST, BROWN &
TODD, LLC, AND ITS PREDECESSORS IN
INTEREST; BROWN, TODD & HEYBURN, PLLC, A
PARTNERSHIP                                                RESPONDENTS

## ORDER

The Order of Recusal entered June 6, 2006 and attached hereto, is

hereby designated **To Be Published**.

All Concur, except Roach, J., not sitting.

Entered: June 7, 2006.

_____
CHIEF JUSTICE

# Supreme Court of Kentucky

## 2005-SC-000872-DR

CAMILLE E. DEAN, CO-PERSONAL
REPRESENTATIVE OF THE ESTATE OF DAVID
H. DEAN, SR.; DAVID H. DEAN, JR., CO-
PERSONAL REPRESENTATIVE OF THE ESTATE
OF DAVID H. DEAN, SR.; ROBERT J. BURNS, SR.,
CO-PERSONAL REPRESENTATIVE OF THE
ESTATE OF DAVID H. DEAN, SR.; CAMILLE E.
DEAN, INDIVIDUALLY; CAMILLE E. DEAN,
BENEFICIARY OF THE ESTATE OF DAVID H.
DEAN, SR.; DAVID H. DEAN, JR., INDIVIDUALLY;
DAVID H. DEAN, JR., BENEFICIARY OF THE
ESTATE OF DAVID H. DEAN, SR.                                    MOVANTS

ON APPEAL FROM COURT OF APPEALS
V.                                              NO. 2004-CA-001345
JEFFERSON CIRCUIT COURT NO. 2000-CI-5764 AND 2000-CI-
7505

JOHN T. BONDURANT; WINSTON E. MILLER;
FROST, BROWN & TODD, LLC; FROST, BROWN &
TODD, LLC, AND ITS PREDECESSORS IN
INTEREST; BROWN, TODD & HEYBURN, PLLC, A
PARTNERSHIP                                                    RESPONDENTS

## ORDER OF RECUSAL

On December 6, 2005, the Movants filed a motion to disqualify me from participating in the decision whether to grant their Motion for Discretionary Review, filed on November 7, 2005, and any further proceedings, should they be necessary. While the Movants fail to cite any legal authority in their motion, they appear to claim that my "impartiality might reasonably be questioned." SCR 4.300, Canon 3E(1). The Movants base their claim on the fact that Respondents' counsel, James E. Milliman, and some Respondents, including Winston E. Miller

and certain other members of the law firm Frost, Brown Todd, LLC ("FBT"), were designated as hosts of a fundraiser for my campaign.[1] The inquiry under Canon 3E(1) "is an objective one, made from the perspective of a reasonable observer who is informed of all the surrounding facts and circumstances." Microsoft Corp. v. United States, 530 U.S. 1301, 121 S.Ct. 25, 26 (2000).[2]

The decision to recuse should not be made lightly by a Kentucky Supreme Court Justice. The unnecessary disqualification of a single justice has a significant practical impact. In a matter where one justice recuses, the Court will hear the case with only six justices. In order for a motion for discretionary review to be granted by the Kentucky Supreme Court, the movant must receive at least four votes. The four-vote requirement remains, regardless of whether six or seven justices actually hear the case. Thus the recusing justice is effectively casting a vote against the petitioning party. See Cheney v. U.S. Dist. Court for Dist. of Columbia, 124 S.Ct. 1391, 1394 (2004) ("Moreover, granting the motion [to recuse] is (insofar as the outcome of the particular case is concerned)

---

[1] I find it particularly ironic that counsel for Movants has characterized this case as "David versus Goliath," arguing that my recusal is necessary to create "a level playing field." Tom Loftus, Motion asks Supreme Court to block justice from hearing Louisville case, Courier-Journal, December 8, 2005. While such rhetoric makes for good newspaper copy, it ignores and obscures the complexity of this situation. After all, as a private attorney, I represented an individual that sued Respondents' predecessor in interest, Brown, Todd & Heyburn, and argued successfully before this Court that my client had been improperly denied discovery by the trial court. See Morrow v. Brown, Todd & Heyburn, 957 S.W.2d 722 (Ky. 1997).

[2] I have determined that the bench and bar could benefit from a thorough analysis of the issues raised by Movants. Although substantial portions of this order address issues which are unique to a Supreme Court justice, much of my analysis regarding campaign contributions is applicable to all judges. Therefore, I have departed from my usual practice of issuing short orders on recusals.

effectively the same as casting a vote against the petitioner. The petitioner needs five votes to overturn the judgment below, and it makes no difference whether the needed fifth vote is missing because it has been cast for the other side, or because it has not been cast at all."); Steven J. Lubet, Disqualification of Supreme Court Justices: The Certiorari Conundrum, 80 Minn. L. Rev. 657, 658 (1996) ("Recusal often appears to be the perfect judicial prophylactic in these situations: if there is a hint of bias, disqualify the judge. At the certiorari stage, however, the disqualification of a Supreme Court Justice actually may harm the very party it was intended to protect. Thus, the right of the petitioner to apparent impartiality may be secured, but only at the cost of actual disadvantage when it comes to obtaining Supreme Court review.").

Additionally, one recusal creates the risk of the Court being equally divided. See Microsoft Corp., 530 U.S. at 1301, 121 S.Ct. at 26-27 ("Not only is the Court deprived of the participation of one of its nine Members, but the even number of those remaining creates a risk of affirmance of a lower court decision by an equally divided court."). This concern is no less valid when applied to the Kentucky Supreme Court. Unlike the other levels of the Kentucky Judiciary, where, for example, another trial judge can hear the case or a different judge can be added to the Court of Appeals panel, there is no remedy for the recusal of a single justice. A 3-3 decision on the issue of discretionary review would mean that the case would not be reviewed and the decision of the lower court would be upheld. Thus, "it is important that we not lightly recuse ourselves." Ruth Bader Ginsburg, An Open Discussion with Ruth Bader Ginsburg, 36 Conn. L. Rev.

1033, 1038-39 (2004) (footnote omitted); see also 1993 Statement of Recusal Policy by Justices of the United States Supreme Court ("We do not think it would serve the public interest to go beyond the requirements of the statute, and to recuse ourselves, out of an excess of caution, whenever a relative is a partner in the firm before us or acted as a lawyer at an earlier stage. Even one unnecessary recusal impairs the functioning of the Court.").

Despite these important concerns, I will recuse when the circumstances demand it. See, e.g., Baze v. Crittenden, No. 2005-SC-000162-OA (Ky. July 13, 2005) (order of recusal from Baze's challenge to the constitutionality of Kentucky's lethal injection method). Given the special practical difficulties that arise with the recusal of a Kentucky Supreme Court Justice, however, any decision to recuse demands the full consideration of all relevant factors.

At the outset, it is important to note that, in this case, the party seeking discretionary review is also the party seeking my recusal. As I have explained, they are essentially requesting that I vote against them. The factual basis for Movants' claim is that I have received campaign contributions from both Respondents' counsel, James E. Milliman, and from Respondents themselves, Winston E. Miller and several other members of FBT, which is also designated as a party in this case.

First, under Kentucky's campaign election finance system, it is obvious, even expected, that lawyers will make most of the contributions to judicial candidates. In fact, Kentucky Bar Association Ethics Opinion E-277 states:

> EC 8-6 states that lawyers, because of their opportunity for
> personal observation and investigation, have a special

-4-

responsibility to aid in the selection of those who are qualified for judicial office. This responsibility includes endorsements and <u>contributions</u> made by attorneys to campaigns.

(internal quotation marks omitted)(emphasis added). E-277 also explains that "[l]awyers are under an affirmative duty to take an active role in selecting qualified judicial candidates both publicly and monetarily." Hundreds if not thousands of lawyers regularly contribute to judicial campaigns across the Commonwealth. Such conduct by an attorney representing a party is simply not improper and is an insufficient basis to demand a judge's recusal.

This is the view adopted by other states that also elect their judges. Moreover, most of these states make no distinction between donations made by parties and those made by attorneys. <u>See</u> <u>MacKenzie v. Super Kids Bargain Store, Inc.</u>, 565 So.2d 1332, 1335 (Fla. 1990); <u>City of Las Vegas Downtown Redevelopment Agency v. Eighth Judicial Dist. Court ex rel. County of Clark</u>, 5 P.3d 1059, 1062 (Nev. 2000); <u>Adair v. State, Dep't of Educ.</u>, 709 N.W.2d 567, 579-81 (Mich. 2006). The Florida Supreme Court explained:

> It cannot be denied that some persons may perceive that the judge will be biased in favor of the contributing litigant or attorney based solely on the fact that a contribution was made. As noted above, however, the standard for determining whether a motion is legally sufficient is whether the facts alleged would place a <u>reasonably prudent person</u> in fear of not receiving a fair and impartial trial. We conclude that an allegation in a motion that a litigant or counsel for a litigant has made a legal campaign contribution to the political campaign of the trial judge, or the trial judge's spouse, without more, is not a legally sufficient ground. A judge is not required to disqualify himself or herself on motion based solely upon such alleged facts. Our conclusion is based upon the interplay of our state constitution, code of judicial conduct, and campaign statutes.

MacKenzie, 565 So.2d at 1335 (emphasis in original)(citation, internal quotation marks and footnote omitted); see also Cherradi v. Andrews, 669 So.2d 326, 327 (Fla.App. 4 Dist. 1996) ("Judges are not required to disqualify themselves solely upon an allegation that an attorney for a party had made a campaign contribution to the judge's political campaign." (citations omitted)). Florida is not alone in rejecting Movants' view. A Texas appellate court explained:

> It is not surprising that attorneys are the principal source of contributions in a judicial election. We judicially know that voter apathy is a continuing problem, especially in judicial races and particularly in contests for a seat on an appellate bench. A candidate for the bench who relies solely on contributions from nonlawyers must reconcile himself to staging a campaign on something less than a shoestring. If a judge cannot sit on a case in which a contributing lawyer is involved as counsel, judges who have been elected would have to recuse themselves in perhaps a majority of the cases filed in their courts. Perhaps the next step would be to require a judge to recuse himself in any case in which one of the lawyers had refused to contribute or, worse still, had contributed to that judge's opponent.
>
> Thus, there is a sound basis in law for the presiding judge's decision denying recusal, where the sole ground was that the judge solicited and accepted campaign contributions from a lawyer representing parties in his court.

Aguilar v. Anderson, 855 S.W.2d 799, 802 (Tex. App. 1993)(citations omitted); see also Roe v. Mobile County Appointment Bd., 676 So.2d 1206, 1233 (Ala.1995), overruled on other grounds, Williamson v. Indianapolis Life Ins. Co., 741 So.2d 1057, 1061 (Ala.1999)( "The reasoning of the Texas court is applicable in Alabama as well."). Even a federal district court has acknowledged that "Texas courts have repeatedly rejected the notion that a judge's acceptance of campaign contributions from lawyers creates bias necessitating recusal or that such acceptance of campaign donations even creates the appearance of

-6-

impropriety." Public Citizen, Inc. v. Bomer, 115 F.Supp.2d 743, 746 (W.D.Tex. 2000).

The Nevada Supreme Court has explained:

In the context of campaign contributions, we have recognized that a contribution to a presiding judge by a party or an attorney does not ordinarily constitute grounds for disqualification. Indeed, we commented that such a rule would "severely and intolerably" obstruct the conduct of judicial business in a state like Nevada where judicial officers must run for election and consequently seek campaign contributions.

In recognition of this recurring problem of campaign contributions, this court recently amended the commentary to NCJC 3(E)(1) to include the following guidance: "The mere receipt of a campaign contribution from a witness, litigant or lawyer involved with a proceeding is not grounds for disqualification." NCJC Canon 3(E)(1) Commentary (2000).

In the present matter, the campaign contributions to Judge Denton, which ranged from $150.00 to $2,000.00, are not extraordinary in amount and, without more, constitute only an "insignificant interest" that does not raise a "reasonable question as to a judge's impartiality." While we commend Judge Denton's efforts to carefully balance his duty to preside with his duty to uphold the integrity of the judiciary, we conclude that the campaign contributions to Judge Denton do not serve as grounds for disqualification under Canon 3(E).

City of Las Vegas Downtown Redevelopment Agency, 5 P.3d at 1062 (citations omitted).

In a lengthy opinion discussing the effect of campaign contributions on the recusal issue, two Michigan Supreme Court Justices explained:

That a judge has at some time received a campaign contribution from a party, an attorney for a party, a law firm employing an attorney for a party, or a group having common interests with a party or an attorney, cannot reasonably require his or her disqualification. For there is no justice in Michigan in modern times who has not received campaign contributions from such persons. Nor is there a justice whose opponents have not received

-7-

campaign contributions from such persons. And, increasingly, "opposition" campaigns have arisen in which contributions are specifically undertaken against particular justices. It is simply impossible for the Supreme Court, as well as most other courts in Michigan, to function if a lawful campaign contribution can constitute a basis for a judge's disqualification. For if a contribution to a judicial candidate can compel a judge's disqualification, then a contribution to an opponent, or the funding of an opposition campaign, must operate in a similar fashion. <u>If so, it would be a simple expedient for a party or a lawyer to "mold" the court that will hear his or her cases by tailoring contributions and opposition contributions.</u>

Even more fundamentally, however, "We, the people, of the State of Michigan," through the Constitution, have created a system of judicial selection in our state in which candidates are nominated by, and elected through, a political process. It is a different system of judicial selection than that which exists in other states and in the federal system, and reasonable persons can debate the merits and demerits of this system. Each of us in different forums has urged various reforms of this system. Nonetheless, the present system has been ordained by our Constitution, and it defines the environment in which those aspiring to judicial office must undertake their efforts.

The premise of our system of judicial selection in Michigan is that judges will periodically be held accountable for their performance. There are no lifetime appointments to judicial positions, and there are no unaccountable committees who determine whether judges should be maintained in office. Thus, the most notable strength of our system of judicial selection is that it requires candidates for judicial office to go out among the electorate and explain why they should be placed in office. This system fosters communication with the electorate, speech-making, debate, the search for support and endorsements, campaign advertising, expressions of judicial philosophy, and efforts to persuasively explain why the election of one or the other candidate ought to be preferred.

Such campaigns must be directed toward an electorate in excess of four million people. In the case of Supreme Court justices, such campaigns will typically involve the expenditure of hundreds of thousands, or even millions, of dollars on television, radio, newspaper, and other advertising, with opposition campaigns expending similar amounts. These expenditures are not funded magically, but are raised from among the electorate, and from

organizations that represent those among the electorate.

Indeed, given the premise of our system of judicial selection that there should be periodic elections for judicial office, it would seem that it is better that campaigns be well-funded and informative, and that candidates be afforded the fullest opportunity to explain their differing perspectives on the judicial role, than that campaigns be poorly funded and result in candidates securing election on the basis of little more than a popular surname.

There will simply be no end to the alleged "appearance of impropriety" if every contribution to a candidate, or every contribution to an opposing candidate, or every independent opposition campaign, is viewed as raising an ethical question concerning a judge's participation in a case in which a contributor or an opposition contributor is involved. Again, while cogent arguments have been made in favor of judicial selection reform, until such reforms are adopted by the people of Michigan, there is little alternative to active judicial participation in the electoral process and the concomitant need to raise funds in order to effectively participate and communicate in this process. If justices of the Supreme Court, in particular, were to recuse themselves on the basis of campaign contributions to their or their opponents' campaigns, there would be potential recusal motions in virtually every appeal heard by this Court, there would be an increasing number of recusal motions designed to effect essentially political ends, and there would be a deepening paralysis on the part of the Court in carrying out its essential responsibilities.

Of considerable relevance to the subject of campaign contributions as a basis for recusal is the Legislature's establishment of limits on individual and political action committee contributions to Michigan judicial candidates. MCL 169.252 and 169.269. Such limits must be understood as clearly reflecting the Legislature's, and the people's, understanding that contributions in these amounts will not supply a basis for disqualification. That is, lawful contributions made within these limits, lawfully reported and lawfully disclosed, cannot fairly constitute a basis for judicial disqualification. Otherwise, these statutes, just as MCR 2.003 and Canon 3(C), would be little more than cleverly devised snares to be exploited by those wishing to undermine individual judges. A judge who plays by the rules should not be required to recuse himself or herself on the basis of such conduct. Thus, we assume, as have all the justices before us, that the Legislature decided that lawful campaign contributions would not give rise to a basis for judicial recusal.

Adair, 709 N.W.2d at 579-81 (emphasis added).

Simply put, I have yet to find a case that required recusal merely based on a campaign contribution within the state's campaign donation limits. To the contrary, the cases that require recusal all involve the existence of a substantial donation coupled with other activities that reasonably raise questions of impartiality. See Pierce v. Pierce, 39 P.3d 791, 798 (Okla. 2001)(requiring recusal when "(1) a lawyer makes a campaign contribution to that judge in the maximum amount allowed by statute [$5,000.00], and (2) a member of that lawyer's immediate family makes a comparable maximum contribution, and (3) that lawyer further assists the judge's campaign by soliciting funds on behalf of the judge, and the contributions and solicitations occur during a pending case in which the lawyer is appearing before that judge"); Caleffe v. Vitale, 488 So.2d 627, 629 (Fla.App. 4 Dist. 1986)(holding that disqualification was required where the party's "attorney is actually running the judge's ongoing reelection campaign").

Aside from the existence of campaign contributions from Respondents and their counsel, Movants have not asserted any additional facts which would raise an appearance of impartiality. Since lawyers and parties who have cases before the courts of this Commonwealth will certainly continue to contribute to judicial campaigns, I believe that the frequent disclosure of campaign contributions is the best course to be followed by a judicial candidate in combating any perception of improper influence. The Florida Supreme Court agrees, stating:

-10-

> The United States Supreme Court recognized that disclosure requirements deter actual corruption and avoid the appearance of corruption by exposing large contributions and expenditures to the light of publicity. This exposure may discourage those who would use money for improper purposes either before or after the election. A public armed with information about a candidate's most generous supporters is better able to detect any post-election special favors that may be given in return. Buckley, 424 U.S. at 67, 96 S.Ct. at 657.

MacKenzie, 565 So.2d at 1337.

I would be remiss if I failed to note the dangerous logic underlying Movants' motion. Were this Court to conclude that the mere existence of campaign contributions mandated a judge's recusal in all cases, it is difficult to predict where this line of reasoning might end.

> [W]e cannot operate a judicial system, or indeed a society, on the basis of the factually unsubstantiated perceptions of the cynical and distrustful. There are countless factors which may cause some members of the community to think that a judge would be biased in favor of a litigant or counsel for a litigant, e.g., friendship, member of the same church or religious congregation, neighbors, former classmates or fraternity brothers. However, such allegations have been found legally insufficient when asserted in a motion for disqualification. The same is true of the ground for disqualification asserted at bar. Contributions such as the one at issue are normal incidents in a campaign for public office. As long as it appears that a contribution was a normal incident in such a campaign, it does not tend to indicate any closer relation between the contributor and the recipient than would ordinarily exist between members of the same local bar.

Id. at 1335 (citations, internal quotation marks and brackets omitted).

Nevertheless, in this particular situation there is more than the mere existence of campaign contributions. Therefore, I will grant the Motion. In reaching this decision, I have relied primarily on two factors: (i) that I have received numerous campaign contributions from many of FBT's attorneys; and,

-11-

perhaps most importantly, (ii) that the party requesting my recusal is the party that is actually harmed by my decision to step aside. As to the first factor, FBT is not a law firm representing clients in this matter, but is a party and, when considered cumulatively, the donations to my campaign that can be associated with the firm are not minimal. Whether or not the first factor is completely dispositive, however, my decision is further confirmed given the Movants' position in this case. As I have noted above, the parties seeking discretionary review herein are the same parties who insist that I recuse. As one commentator has observed, recusal ensures that "the right of the petitioner to apparent impartiality may be secured, but only at the cost of actual disadvantage when it comes to obtaining Supreme Court review." Lubet, supra, at 658.

Finally, I must note that I take great umbrage with Movants' choice of words in their recusal motion. Officers of the court should refrain from using words such as "misconduct" when describing the activities of an opposing party if there is no basis for leveling such a charge. No such basis exists.

Entered: June 6, 2006.

JOHN C. ROACH
ASSOCIATE JUSTICE

-12-

**COUNSEL FOR MOVANTS:**

Sandra L. Bennett
101 North Seventh Street
Louisville, Kentucky 40202

Peter F. Ervin
1000 Cherokee Road, Suite 06
Louisville, Kentucky 40204

**COUNSEL FOR RESPONDENTS:**

James E. Milliman
Middleton & Reutlinger
401 South Fourth Avenue
2500 Brown & Williamson Tower
Louisville, Kentucky 40202-3410

Rebecca Grady Jennings
Middleton & Reutlinger
401 South Fourth Avenue
2500 Brown & Williamson Tower
Louisville, Kentucky 40202-3410