129 Nev., Advance Opinion 16

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| LUCIAETTA MARIE IVEY, Petitioner, vs. THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF CLARK; AND THE HONORABLE JENNIFER P. TOGLIATTI, DISTRICT JUDGE, Respondents, and PHILLIP DENNIS IVEY, JR., Real Party in Interest. | No. 59297 <br><br> **FILED** <br><br> MAR 28 2013 <br><br> TRACIE K. LINDEMAN CLERK OF SUPREME COURT BY CHIEF DEPUTY CLERK |

Original petition for a writ of mandamus or prohibition challenging a district court order denying a request to recuse a district court judge in a family law action.

Petition denied.

Pecos Law Group and Bruce I. Shapiro and Shann D. Winesett, Henderson,
for Petitioner.

Chesnoff & Schonfeld and David Z. Chesnoff and Richard A. Schonfeld, Las Vegas,
for Real Party in Interest.

BEFORE THE COURT EN BANC.

SUPREME COURT
OF
NEVADA

(O) 1947A

13-09161

## OPINION

By the Court, GIBBONS, J.:

The case underlying this original writ petition involves post-divorce-decree proceedings between real party in interest Phillip Dennis Ivey, Jr., and petitioner Luciaetta Marie Ivey. More than a year after Luciaetta's and Phillip's divorce, Luciaetta filed a "Motion For An Order To Show Cause Why Defendant Should Not Be Held In Contempt Of Court, To Reopen Discovery, And For Attorney's Fees; And For Related Relief" (motion to reopen discovery). Luciaetta then filed a motion to disqualify Judge William Gonzalez from hearing the motion to reopen discovery. In Luciaetta's motion to disqualify, Luciaetta asserted that Judge Gonzalez's recusal was required under the Due Process Clause of the United States Constitution and under Nevada law. Luciaetta claimed that Judge Gonzalez hearing the motion would create an appearance of impropriety because Phillip and others connected to the Ivey divorce contributed to Judge Gonzalez's reelection campaign. After a hearing, respondent Judge Jennifer P. Togliatti denied Luciaetta's motion to disqualify Judge Gonzalez, and Judge Gonzalez went on to preside over Luciaetta's motion to reopen discovery. As a result, Luciaetta petitioned this court for a writ of mandamus or prohibition vacating Judge Togliatti's order and disqualifying Judge Gonzalez from hearing the motion to reopen discovery. Because we conclude that the failure to disqualify Judge Gonzalez did not violate Luciaetta's due process rights or Nevada law, we deny Luciaetta's petition.

## FACTS AND PROCEDURAL HISTORY

After seven years of marriage, Phillip and Luciaetta filed a joint petition for divorce. During the divorce proceedings, attorney David Chesnoff represented Phillip. Phillip also hired attorney John Spilotro to

represent Luciaetta and paid Spilotro a flat fee of $10,000. On December 29, 2009, Judge Gonzalez entered a divorce decree ending the marriage.

According to the divorce decree, Luciaetta and Phillip entered into a Marital Settlement Agreement that outlined the distribution of the community property and Phillip's and Luciaetta's obligations following the divorce. Under the Marital Settlement Agreement, Phillip was to pay Luciaetta $180,000 per month as alimony from the income that he received from his interest in Tiltware, LLC, an Internet poker company. The Marital Settlement Agreement stated that Phillip's obligation to pay alimony would end if he ever stopped receiving income from Tiltware. The Marital Settlement Agreement also contained a provision that acknowledged that Phillip and Luciaetta received the advice of independent counsel in connection with the terms of the agreement.

After the entry of Phillip's and Luciaetta's divorce decree, Judge Gonzalez successfully ran for reelection as a judge for the family division of the district court in Clark County. During Judge Gonzalez's campaign for reelection, he received a total of $71,240 in cash donations and a total of $14,216.65 for in-kind contributions. Phillip and others connected to the Iveys' divorce contributed to these totals for Judge Gonzalez's campaign. In February 2010, Chesnoff donated $1,000 in cash to Judge Gonzalez and a few months later made an in-kind contribution of $3,543.54 by holding a fundraiser. In April 2010, Chesnoff's wife contributed $2,500 in cash, while Chesnoff's law partner donated $1,000 in cash. Spilotro's law firm contributed $500 in cash to Judge Gonzalez during the month of April as well. Finally, Phillip donated $5,000 in cash to Judge Gonzalez's campaign on April 17, 2010.

The cash contributions from all of these individuals amounted to $10,000 and were approximately 14 percent of the total cash contributions to Judge Gonzalez's campaign. Chesnoff's in-kind donation

equaled 25 percent of the total in-kind contributions to Judge Gonzalez's campaign. Phillip's $5,000 donation was the largest amount contributed by any individual person, but two political action committees donated $5,000 as well. Phillip's contribution amounted to 7 percent of the total cash contributions to Judge Gonzalez's campaign.

In May 2011, a dispute arose over Phillip's monthly alimony payments. Following the dispute, Luciaetta filed a motion to reopen discovery. Judge Gonzalez was assigned to hear Luciaetta's motion.

Prior to the hearing, Luciaetta filed an affidavit requesting that Judge Gonzalez recuse himself from hearing the motion to reopen discovery because the campaign contributions created an appearance of impropriety. In response, Judge Gonzalez filed an affidavit acknowledging the campaign contributions, but noting that under Nevada law, the receipt of campaign donations alone does not serve as grounds for disqualification. Judge Gonzalez also stated in the affidavit that he met with Phillip only one time at an event several months after he entered the Iveys' divorce decree and that he never discussed the divorce with Phillip or his attorney outside of court.

Luciaetta then filed a motion to disqualify Judge Gonzalez from hearing her motion to reopen discovery based on the Due Process Clause of the United States Constitution and Nevada law. Judge Togliatti held a hearing on Luciaetta's motion to disqualify and subsequently denied the motion. Judge Togliatti determined that based on both federal and Nevada law, the campaign contributions did not rise to such a level as to create an appearance of impropriety requiring Judge Gonzalez's recusal.

Luciaetta now petitions this court for writ relief, requesting that this court vacate the order denying the motion to disqualify Judge Gonzalez and order that the case be assigned to a different department

because Judge Gonzalez hearing the motion to reopen discovery violated due process and Nevada law.[1]

## DISCUSSION

### Standard of review

Luciaetta has petitioned this court for a writ of mandamus or prohibition. "[A] petition for a writ of mandamus is the appropriate vehicle to seek disqualification of a judge." Towbin Dodge, LLC v. Dist. Ct., 121 Nev. 251, 254-55, 112 P.3d 1063, 1066 (2005). Mandamus is available "to compel the performance of an act which the law especially enjoins as a duty resulting from an office, trust or station," NRS 34.160, or to control an arbitrary or capricious exercise of discretion. International Game Tech. v. Dist. Ct., 124 Nev. 193, 197, 179 P.3d 556, 558 (2008). Generally, this court will not issue a writ of mandamus when a petitioner has "a plain, speedy and adequate remedy in the ordinary course of law." NRS 34.170. No such legal remedy exists here. Accordingly, we exercise our discretion to determine whether Judge

---

[1]Phillip asserts that Luciaetta's writ petition is moot because Luciaetta did not seek a stay of the district court proceedings and the matter has now reached its conclusion. We disagree. This court determines only actual, live controversies and will not render opinions on issues that cannot affect the outcome of a case. University Sys. v. Nevadans for Sound Gov't, 120 Nev. 712, 720, 100 P.3d 179, 186 (2004). As a result, a case may become moot by the occurrence of subsequent events that eliminate any actual controversy. Id. After filing the writ petition, Luciaetta did not seek a stay of the post-divorce proceedings with the district court or this court. Thus, Judge Gonzalez continued to preside over the underlying proceedings and ultimately denied Luciaetta's motion to reopen discovery. While Judge Gonzalez already denied Luciaetta's motion, we conclude that an actual controversy still exists because, if rendered in violation of Luciaetta's due process rights, that decision could be void. As a result, Luciaetta's writ petition is not moot.

Gonzalez should have been disqualified from hearing and ruling on Luciaetta's motion.

## Judge Gonzalez hearing Luciaetta's motion to reopen discovery did not violate Luciaetta's due process rights

Luciaetta argues that the United States Supreme Court's decision in Caperton v. A. T. Massey Coal Co., 556 U.S. 868 (2009), requires Judge Gonzalez's recusal under the Due Process Clause. We disagree.

The Due Process Clause guarantees the right to a fair trial before a fair tribunal. Id. at 876 (citing In re Murchison, 349 U.S. 133, 136 (1955)). Determining whether a judge's recusal is compelled by the Due Process Clause does not require proof of actual bias; instead, a court must objectively determine whether the probability of actual bias is too high to ensure the protection of a party's due process rights. Id. at 883-84 (citing Withrow v. Larkin, 421 U.S. 35, 47 (1975)). When an individual with a personal interest in a specific case "ha[s] a significant and disproportionate influence" in putting a judge on the case by contributing funds to the judge's campaign while the case is pending, the United States Supreme Court has concluded that the risk of actual bias is great. Id. at 884. In such a situation, a court must examine the size of the contribution in comparison to the total campaign contribution amount, the total sum spent during the election, and the effect that the contribution may have had on the election's outcome. Id. A court must also review the timing of the campaign contributions in relation to the judge's election and the status of the contributor's case. Id. at 886. Thus, determining whether the risk of actual bias violates a party's due process rights must be done on a case-by-case basis. See id. at 884-86.

The Caperton decision addressed whether the Due Process Clause required a West Virginia Supreme Court justice's recusal when

Supreme Court
of
Nevada

(O) 1947A

6

substantial third-party expenditures had been made supporting the justice's election by a party to a case pending before the court. Id. at 872. In concluding that the justice's failure to disqualify himself violated due process, the United States Supreme Court noted that while not every contribution by a litigant or attorney creates such a high risk of actual bias requiring recusal, the Caperton circumstances were an "exceptional case." Id. at 884. The party in Caperton contributed $3,000,000 to a committee advocating the justice's election in place of an incumbent justice, 300 percent more than the justice's own campaign committee spent on the election and $1,000,000 more than the total amount spent by both candidates' campaign committees combined. Id. The Court also noted that the timing of the contributions was critical, as they were made prior to the party's appeal of the district court judgment, when it was reasonably foreseeable that the case would be before the newly elected justice. Id. at 886. Thus, the Court determined that the timing of the contributions, along with the disproportionate influence that the donations had in placing the justice on the case, created such a high risk of actual bias that the justice's failure to disqualify himself violated due process. Id. at 886-87.

We conclude that the donations by Phillip and others connected to the Ivey divorce do not rise to the "exceptional" level of the campaign contribution at issue in Caperton. See id. at 884. First, the donations at issue are much smaller than the $3,000,000 contribution in Caperton. Phillip's $5,000 donation amounted to 7 percent of Judge Gonzalez's total campaign contributions. Phillip's donation combined with the others' contributions amounted to $10,000 and constituted 14 percent of the total cash contributions to Judge Gonzalez's campaign. The in-kind donation of Phillip's attorney equaled 25 percent of the total in-kind contributions to Judge Gonzalez's campaign. We recognize that these

donations are greater than the contributions of other individuals to Judge Gonzalez's campaign. However, these amounts do not reach the extraordinary level of the sum at issue in Caperton. See id.

Second, the timing of these contributions is less suspicious than the timing of the Caperton donations. Phillip and the others contributed to Judge Gonzalez's campaign only after the conclusion of the divorce. Luciaetta points out that the contributions occurred prior to the expiration of the six-month time limit in NRCP 60(b). Despite the contributions occurring within this six-month period, and although post-decree motions are not uncommon in divorce proceedings, the particular facts of this appeal do not demonstrate such a high risk of bias that due process required Judge Gonzalez's recusal. Phillip and Luciaetta filed a joint petition for divorce, which indicated that Phillip and Luciaetta had executed a Marital Settlement Agreement that divided their community property and set forth their obligations post-divorce. Luciaetta was represented by counsel during the negotiation of the Marital Settlement Agreement and throughout the divorce proceedings. Although Luciaetta notes that Phillip was paying for her representation during the divorce, Luciaetta signed the Marital Settlement Agreement, which specifically states that both Phillip and Luciaetta recognize that they had the opportunity to receive the independent advice of counsel. Furthermore, Luciaetta did not bring her motion to reopen discovery until June 6, 2011, more than a year after the divorce decree was entered and the contributions were made. As a result, Judge Togliatti did not abuse her discretion by finding that Judge Gonzalez hearing Luciaetta's motion to reopen discovery would not violate Luciaetta's due process rights.

<u>Judge Gonzalez hearing Luciaetta's motion to reopen discovery did not violate Nevada law</u>

Luciaetta argues that if Judge Gonzalez's disqualification is not required under the Due Process Clause, the district court should have disqualified Judge Gonzalez under more stringent Nevada law—NRS 1.230 and the Nevada Code of Judicial Conduct (NCJC). We disagree.

In Nevada, "a judge has a general duty to sit, unless a judicial canon, statute, or rule requires the judge's disqualification." <u>Millen v. Dist. Ct.</u>, 122 Nev. 1245, 1253, 148 P.3d 694, 700 (2006). NRS 1.230 prohibits a judge from presiding over any matter when actual or implied bias exists on the part of the judge. The relevant provisions of NCJC Rule 2.11(A) provide:

> A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances:
>
> (1) The judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of facts that are in dispute in the proceeding.
>
> (2) The judge knows that the judge . . . is:
>
> . . . .
>
> (c) a person who has more than a de minimis interest that could be substantially affected by the proceeding . . . .
>
> (3) The judge knows that he or she . . . has an economic interest in the subject matter in controversy or in a party to the proceeding.

NCJC defines "[d]e minimis" as "an insignificant interest that could not raise a reasonable question regarding the judge's impartiality." NCJC Terminology (2011). This court has recognized "that a contribution to a presiding judge by a party or an attorney does not ordinarily constitute grounds for disqualification." <u>Las Vegas Downtown Redev. v. Dist. Ct.</u>,

SUPREME COURT
OF
NEVADA

(O) 1947A

9

116 Nev. 640, 644, 5 P.3d 1059, 1062 (2000) (ordering judge who recused himself to hear case).[2]

We conclude that the campaign contributions at issue here were not significant enough to "raise a reasonable question" as to Judge Gonzalez's impartiality. The individual contributions of Phillip and the others ranged from $500 to $5,000. These amounts are within the statutory limits for campaign contributions. See NRS 294A.100 (stating that a person shall not contribute more than $5,000 to a candidate within a certain time). Furthermore, the contributions occurred after Phillip and Luciaetta filed the joint petition for divorce and Judge Gonzalez entered the divorce decree. Thus, the campaign contributions are not exceptional. See Las Vegas Downtown Redev., 116 Nev. at 645, 5 P.3d at 1062 (stating that contributions ranging from $150 to $2,000 to a district court judge's campaign were not extraordinary and did not require the judge's disqualification). Without more, the campaign contributions are insufficient to demonstrate that actual or implied bias existed on the part of Judge Gonzalez. Campaign contributions made within statutory limits cannot constitute grounds for disqualification of a judge under Nevada law. See In re Petition to Recall Dunleavy, 104 Nev. 784, 790, 769 P.2d 1271, 1275 (1988) (explaining that "intolerable results" would occur if litigants could disqualify a judge because an attorney for the opposing

---

[2]After filing her writ petition, Luciaetta later filed a motion to supplement her petition with a memorandum from the American Bar Association (ABA) on potential changes to the provisions of the ABA Model Code concerning judicial disqualification. We granted Luciaetta's motion and allowed her to file the ABA memorandum as a supplemental appendix. Having reviewed the supplemental appendix, we conclude that it does not affect our analysis of Nevada law and judicial disqualification.

party donated to the judge's campaign).[3] Therefore, Judge Togliatti did not abuse her discretion by finding that Nevada law does not require Judge Gonzalez's disqualification.

## CONCLUSION

We conclude that Judge Gonzalez was not disqualified from presiding over Luciaetta's motion based on the contributions made to Judge Gonzalez's campaign because doing so violated neither Luciaetta's due process rights nor Nevada law. Accordingly, we deny Luciaetta's writ petition.

_____, J.
Gibbons

I respectfully concur:

_____, J.
Cherry

_____

[3]The Nevada Constitution specifically requires the election of district court judges. Nev. Const. art. 6, § 5. Furthermore, the citizens of Nevada defeated a recent ballot initiative to change the selection process for judges from election to appointment. See Nevada Ballot Questions 2010, Nevada Secretary of State, Question No. 1; Nevada Secretary of State, 2010 Official Statewide General Election Results, available at http://www.nvsos.gov/soselectionpages/results/2010StatewideGeneral/ElectionSummary.aspx. Campaign contributions are necessarily a part of judicial elections.

HARDESTY, J., with whom PICKERING, C.J., and PARRAGUIRRE and DOUGLAS, JJ., agree, concurring:

I concur that the petition should be denied for the reasons expressed by the majority. I write separately, however, to address our concurring colleague's criticism of the Nevada Code of Judicial Conduct's (NCJC) current campaign contribution rules. Although the concurrence voices concerns about the rules, it offers no solutions and fails to engage the administrative docket process, as this court did in 2009, to solicit comments from the judiciary, the bar, and the public to consider potential amendments. See Nevada Rules on the Administrative Docket (NRAD) 3.2, 7.

In 2009, this court initiated a thorough review of the NCJC, which included a study of the Code's campaign finance rules and due process considerations in light of the United States Supreme Court's decision in Caperton v. A. T. Massey Coal Co., 556 U.S. 868 (2009). A committee appointed by this court, comprised of members of Nevada's judiciary, the bar, and professors from the William S. Boyd School of Law, filed a supplement to its final report on August 13, 2009, recommending two bright-line rules for judicial disqualification because of campaign contributions that substantially deviated from campaign contribution provisions contained in Nevada's campaign finance statutes. See In the Matter of the Amendment of the Nevada Code of Judicial Conduct, ADKT No. 427 (Supplement to Final Report, August 13, 2009). The first proposed rule change would have required disqualification by a judge who received financial support "within the previous 6 years from a party, or a party's affiliate[ ] . . . , or a party's lawyer or the law firm of a party's lawyer in an aggregate amount that exceeds $50,000." Id. The second

suggestion would have required disqualification if the judge "received aggregate campaign support exceeding 5 [percent] of the judge's total financial [support] within the previous 6 years from a party, or a party's affiliated entities . . . , or a party's lawyer or the law firm of a party's lawyer," and required disqualification if the support "create[d] a reasonable question as to the judge's impartiality." Id.

Following extensive public comment, all justices, including our concurring colleague, voted to adopt the Revised Nevada Code of Judicial Conduct without inclusion of either of the committee's recommended amendments to the judicial campaign finance rules. See In the Matter of the Amendment of the Nevada Code of Judicial Conduct, ADKT No. 427 (Order, December 17, 2009). The Nevada Constitution gives our citizens the right to elect their judges and justices. Informed exercise of this right requires campaigns, which in turn require campaign finances. As this court learned in 2009 when it engaged in the administrative docket process, there are no easy answers when one weighs the duty of a judge to sit on a case against a party's due process right to an impartial adjudication in a state that has chosen to elect its judges. But the due process considerations are, at this juncture, limited by the exceptional circumstances discussed in Caperton. While individual cases may require disqualification because of unique campaign-based relationships, Caperton did not compel per se rules that are stricter than statutory campaign limits. As our concurring colleague concedes, this case is substantially different from Caperton as all of the campaign contributions to Judge Gonzalez at issue here were within statutory limits and made after this court entered its order amending the NCJC without the committee's recommended changes. Under these circumstances, it would be

unreasonable to conclude that Judge Togliatti abused her discretion by finding that Nevada law does not require Judge Gonzalez's disqualification.

_____, J.
Hardesty

We concur:

_____, C.J.
Pickering

_____, J.
Parraguirre

_____, J.
Douglas

SAITTA, J., concurring:

Though I agree with the majority's ultimate conclusion, I write separately in order to voice my concerns with the current judicial campaign contribution rules. The error asserted in this case clearly does not rise to a level that violates either party's due process right to a fair trial before a fair tribunal. Further, as discussed by the majority, the contributions made to Judge Gonzalez's reelection campaign were all within the statutory limit. Therefore, under our current codical scheme, recusal or disqualification was not specifically required. However, I find it necessary to voice my concerns regarding the potential that the circumstances in this matter lend an air of impropriety to the proceedings.

It is arguably the most significant responsibility of a judge to "act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary and [to] avoid impropriety and the appearance of impropriety." NCJC R. 1.2. The comments to this rule recognize that impropriety and appearances of impropriety, or "[c]onduct that compromises or appears to compromise the independence, integrity, and impartiality of a judge," diminish the public's confidence in the judiciary. Id. cmt. 3. The test for an appearance of impropriety is "whether the conduct would create in reasonable minds a perception that the judge violated [the Nevada] Code [of Judicial Conduct] or engaged in other conduct that reflects adversely on the judge's honesty, impartiality, temperament, or fitness to serve as a judge." Id. cmt. 5. Perhaps the most significant challenge to the judiciary's independence and impartiality is the increase in the volume and amount of campaign contributions.

Generally, "a contribution to a presiding judge by a party or an attorney does not . . . constitute grounds for disqualification." Las Vegas Downtown Redev. v. Dist. Ct., 116 Nev. 640, 644, 5 P.3d 1059, 1062 (2000). Thus, it appears that a judge's duty to sit is not overcome by campaign contributions within the statutory limit. See id. Presently, NRS 294A.100(1) imposes a $10,000 aggregate limit on individuals making campaign contributions. Consequently, a judge must constantly balance the duty to sit, Millen v. Dist. Ct., 122 Nev. 1245, 1253, 148 P.3d 694, 699 (2006), with the duty to "respect and honor the judicial office as a public trust and strive to maintain and enhance confidence in the legal system." NCJC preamble. I propose that the judge's duty to sit "should not be construed to suggest that judges should refuse to disqualify themselves in apt circumstances or that close cases should routinely be resolved against disqualification. On the contrary, close questions should ordinarily be resolved in favor of disqualification in order to preserve public confidence in the judicial system." Jeffrey W. Stempel, Chief William's Ghost: The Problematic Persistence of the Duty to Sit, 57 Buff. L. Rev. 813, 957-58 (2009).

As my concurring colleagues point out, this court, following an administrative process including public hearings and participation by leading scholars, adopted the Revised Nevada Judicial Code. At that time, we chose not to adopt bright-line rules to guide judges in making the difficult decision to recuse themselves following substantial campaign contributions. Although I joined my colleagues in adopting the revisions to the code, the instant case reveals that it is perhaps time to revisit the current rules and their application to real cases in controversy. In our current political landscape, we must be cognizant of the potential

 

appearance of impropriety arising from the type of campaign contributions made in this case—numerous contributions within the statutory limit made by a group of individuals who all have interests in a single case. Ongoing judicial review, indeed our core function, commands that we reconsider prior decisions in light of the case presented.

Here, Phillip, his attorney, his attorney's spouse, and his attorney's law partner contributed a total of $9,500. Luciaetta's attorney also contributed $500. In total, these contributions made up only 14 percent of the total cash donations to Judge Gonzalez's reelection campaign. Phillip's attorney also made a $3,543.54 in-kind contribution by holding a fundraiser. This amount constituted 25 percent of the total in-kind contributions made to Judge Gonzalez's reelection campaign. Although the monetary value of these contributions are not so significant that they rise to the level described in Caperton v. A. T. Massey Coal Co., 556 U.S. 868 (2009), the fact that so many individuals associated with the Iveys' divorce contributed to Judge Gonzalez's campaign lends a definite air of impropriety, especially in light of the fact that it was possible that future matters related to the divorce would come before him.

The divorce decree specifically approves of the marital settlement agreement, which contained specific provisions relating to Luciaetta's alimony. Significantly, alimony would only continue so long as Phillip was receiving income from Tiltware, LLC. Thus, it is clear that the district court could at some point be called on to redefine the parties' rights under the marital settlement agreement if Phillip stopped receiving income from his company, which, in fact, is what happened. Therefore, although the divorce decree was final, the district court maintained jurisdiction to modify any previous adjudication of Phillip and Luciaetta's

property rights. See NRS 125.150(7). Further, under Nevada's one family, one judge rule, the same judge must preside over any matters involving the same family. NRS 3.025(3).

A significant portion of the majority opinion focuses on Caperton, the United States Supreme Court's most recent and expansive decision regarding due process and judicial campaign contributions. I agree with the majority in its determination that Luciaetta's right to a fair trial before a fair tribunal was not violated by the various contributions made to Judge Gonzalez's reelection campaign. And I reiterate that under the current contribution rules, Judge Gonzalez did nothing wrong. However, as noted in Caperton, ensuring that the parties' due process rights are upheld is only the "'constitutional floor,'" and individual states are free to set more rigorous standards on judicial disqualification based on campaign contributions. 556 U.S. at 889 (emphasis added) (quoting Bracy v. Gramley, 520 U.S. 899, 904 (1997)). Thus, it is the individual state's responsibility to take further action to ensure that the public's confidence in the integrity of the judiciary is strong. "The citizen's respect for judgments depends . . . upon the issuing court's absolute probity. Judicial integrity is, in consequence, a state interest of the highest order." Republican Party of Minn. v. White, 536 U.S. 765, 793 (2002) (Kennedy, J., concurring).

Following Caperton, a number of states have adopted new disqualification rules. Several states have promulgated new rules or comments that either cite to Caperton or to the specific factors relied upon in the decision. See, e.g., Ark. Code of Jud. Conduct R. 2.11 cmt. 4A (LexisNexis 2012); Ga. Code of Jud. Conduct Canon 3E(1)(d) (LexisNexis 2012); N.M. R. Ann. R. 21-211 cmt. 6 & 7 (2012); Tenn. Sup. Ct. R. 10, R.

 

of Jud. Conduct 2.11 cmt. 7 (LexisNexis 2012); Wash. Code of Jud. Conduct R. 2.11(D) (West 2011).

Prior to <u>Caperton</u>, the American Bar Association amended the Model Code of Judicial Conduct regarding campaign contributions as grounds for judicial disqualification as follows:

> A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances:
>
> . . . .
>
> (4) The judge knows or learns by means of a timely motion that a party, a party's lawyer, or the law firm of a party's lawyer has within the previous [insert number] year[s] made aggregate contributions to the judge's campaign in an amount that is greater than $[insert amount] for an individual or $[insert amount] for an entity [is reasonable and appropriate for an individual or an entity].

Model Code of Jud. Conduct R. 2.11(A) (2011). In adopting this provision, Arizona set the time period at four years and the contribution level at the maximum campaign contribution allowed in the state. Ariz. Sup. Ct. R. 81, Code of Jud. Conduct R. 2.11(A)(4) (West 2010). Utah set its threshold at a much lower level: three years and $50. Utah Code of Jud. Conduct R. 2.11(A)(4) (LexisNexis 2012).

Other states like Alabama, California, and New York have adopted explicit statutes or rules that require a judge's recusal if the party or attorney appearing before the judge has contributed a certain dollar amount and did so within a specific period of time before or after the judge's election. Ala. Code § 12-24-2(c) (LexisNexis 2005); Cal. Civ. Proc. Code § 170.1(a)(9)(A) (West Supp. 2012); N.Y. Ct. R. § 151.1(B) (McKinney

2012). The New York rule also imposes a collective contribution cap, which limits the amount of contributions that a law firm, individual lawyer, and individual clients can contribute as a group. N.Y. Ct. R. § 151.1(B)(2) (McKinney 2012).

As stated above, it is not my wish to insinuate that Judge Gonzalez or Judge Togliatti have acted improperly in their review of Luciaetta's motion to disqualify Judge Gonzalez. As our Code of Judicial Conduct stands today, there is no bright-line test to apply to judicial contributions. Rule 2.11 of the Nevada Code of Judicial Conduct lacks any iteration of the rules described above. This lack of definition fails to provide a concrete rubric against which to analyze such contributions.

Here, Phillip contributed the single largest contribution by an individual and, in addition to his individual contribution, his attorney, his attorney's wife, and his attorney's law partner all contributed somewhat substantial amounts of money to Judge Gonzalez's campaign. Further, although these contributions came after the divorce decree, it was entirely foreseeable that Phillip and Luciaetta would have to appear before Judge Gonzalez in future matters relating to alimony payments. These circumstances create an appearance of impropriety that the judiciary should strive to avoid. By adopting some variation of the judicial contribution rules promulgated in other jurisdictions, this court could lend clarity not only to judges and justices, who rely on contributions to fund their campaigns, but also to the citizens who rely on the integrity and impartiality of the judiciary.

_____, J.
Saitta